Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DEBORAH RIVERA VELÁZQUEZ Y OTROS<br><br>Peticionarios<br><br>V.<br><br>SCI PUERTO RICO I, Y OTROS<br><br>Recurridos | KLCE202500215 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2021CV02252<br><br>Sobre: Incumplimiento Contractual; Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Domínguez Irizarry, la Juez Lebrón Nieves y la Juez Rivera Marchand

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de marzo de 2025.

El 5 de marzo de 2025, compareció ante este Tribunal de apelaciones la señora Deborah Rivera Velázquez (en adelante, señora Rivera Velázquez o parte peticionaria), por medio de *Solicitud de Certiorari*. Mediante este, nos solicita que revisemos la *Resolución* emitida y notificada el 4 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del aludido dictamen, el foro *a quo* determinó que no procedía la inhibición del Juez Ignacio Morales Gómez (en adelante, Juez Morales Gómez).

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda Enmendada* sobre daños y perjuicios, presentada por la señora Rivera Velázquez y otros, en contra de Empresas Steward-Cementerios, SCI Puerto Rico I, Dignity

Número Identificador

RES2025 _____

Memorial, Cementerio La Resurrección, la señora Daris Verdecía y su esposo Fulano de Tal, el señor Carlos Torres y su esposa Fulana de Tal, y Aseguradora X (en conjunto, parte recurrida). En esencia, la parte peticionaria sostuvo que, la señora Dorcas Velázquez Ayala (en adelante, señora Velázquez Ayala), había suscrito con la parte recurrida un contrato de venta al por mayor a plazos de un panteón ubicado en el Cementerio la Resurrección. Según se desprende de la demanda, dentro del contrato, se había estipulado que existían dos (2) espacios disponibles para enterramiento. El 25 de agosto de 2021, la señora Velázquez Ayala falleció. La parte peticionaria adujo que, acudió al Cementerio La Resurrección para solicitar los servicios de enterramiento de la señora Velázquez Ayala, pero que, le notificaron que no estaba autorizada a hacerlo y que quien debía solicitarlo era el señor Neddie O. Rivera Carcaña (en adelante, señor Rivera Carcaña), codueño de la propiedad. Mencionó que, le notificó a la empleada que la atendió que el señor Rivera Carcaña se encontraba incapacitado para hacerlo. Por lo anterior, la empleada le sugirió que realizara una declaración jurada donde el señor Rivera Carcaña le autorizara a llevar a cabo las gestiones. Ante varios intentos infructuosos de diálogo con el cementerio para que le permitiera a la señora Rivera Velázquez realizar las gestiones, esta acudió al foro primario, donde se emitió un Injunction Preliminar contra la parte recurrida para autorizar a la señora Rivera Velázquez a realizar los trámites pertinentes. Asimismo, sostuvo que, el panteón, de acuerdo el contrato, contaba con seis (6) espacios, pero que, habían sepultado el cuerpo de la señora Velázquez Ayala de forma que no quedara el sexto espacio disponible. Añadió que, en una visita al Cementerio pudo observar que habían incumplido con el mantenimiento debido a que no mantenían los lotes conforme a lo establecido en el contrato.

En su petitorio, la parte peticionaria argumentó que, hubo incumplimiento de contrato por la parte recurrida. Asimismo, reclamó una partida por daños y perjuicios como consecuencia del alegado incumplimiento de contrato.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, el 16 de septiembre de 2024, la parte peticionaria presentó *Moción de Inhibición por Expresiones Vertidas por el Encargado de Adjudicar el Caso en la Vista sobre Estados de los Procedimientos Celebrada el 6 de septiembre de 2024 Demostrativas que Prejuzgó los M[é]ritos de la Controversia*. En su moción, la parte peticionaria sostuvo que, el 6 de agosto de 2024, el foro *a quo* celebró una vista presidida por el Juez Morales Gómez. Acotó que, en la mencionada vista pudo observar y percibir por parte del Juez Morales Gómez una actitud de desconocimiento sobre aspectos relevantes del caso y conducta que aparentaba parcialidad por haber prejuzgado el caso, conforme a la Regla 63.1 de Procedimiento Civil. La parte peticionaria mencionó tres situaciones que le llevaron a creer que el Juez Morales Gómez había prejuzgado el caso. La primera fue la siguiente:

> (c) En la vista sobre Estados de los Procedimientos de ese 6 de septiembre de 2024 el Honorable Juez Morales Gómez luego de solicitar un receso para la lectura de la demanda enmendada informa:
>
> "Yo he revisado la demanda enmendada que se presentó el **24 de septiembre de 2021** ahí se menciona el hecho de que la señora madre de los demandantes fue enterrada en el **último espacio disponible** impidiendo el enterramiento futuro, pero de la manera en **que se alega ese hecho** es en el contexto que todo eso ocasionó los daños a la parte demandante en el contexto de su experiencia y llegar al cementerio a solicitar su enterramiento y que pasaron los disgustos qu[e] pasaron".

Respecto a la anterior, sostuvo que, el hecho de que el Juez Morales Gómez informara en sala que la señora Dorcas Velázquez Ayala había ocupado el último espacio de enterramiento, implantó dudas sobre su capacidad para adjudicar la controversia de forma

imparcial, puesto que, esa afirmación previa al juicio podía indicar prejuzgamiento del caso. Alegó que, de acuerdo a esto, procedía que el Juez Morales Gómez se inhibiera del caso.

La segunda situación que planteó la parte peticionaria en su moción fue:

> **El segundo hecho que sugiere la posibilidad de que el magistrado haya prejuzgado la controversia son los comentarios realizados en respuesta a la solicitud de peritaje presentada por la parte demandante, relacionada con los sucesos ocurridos el 9 de diciembre de 2024 en el Cementerio La Resurrección, cuando se abrió la tapa del panteón en presencia de la parte demandante.**

Sobre ese particular, la parte peticionaria sostuvo que, había solicitado descubrimiento de prueba respecto a un nuevo hecho que evidenciaba que la señora Dorcas Velázquez Ayala no había sido sepultada correctamente. Indicó que, el Juez Morales Gómez le había preguntado cuál prueba pericial necesitaba para probar lo anterior, y que, la parte peticionaria había contestado que, en la visita al cementerio habían tomado fotos que demostraban que no se selló la tumba según lo requería el Reglamento de Salud. Sobre lo anterior esbozó lo siguiente:

> (g) Como respuesta el Honorable Juez Ignacio Morales Gómez contestó que aquí no está en juego el Reglamento de Salud, añadió que lo que está en juego es una alegación de incumplimiento contractual. El juez comentó que esto nada tiene que ver con la alegación de incumplimiento contractual de la demanda ni está en juego si se cumplió con el Reglamento del Departamento de Salud.

La parte peticionaria argumentó que, dichas expresiones fueron emitidas a base de la opinión del Juez Morales Gómez y no de la prueba recibida.

La tercera situación planteada por la parte peticionaria fue:

> **Tercer hecho que anticipa la posibilidad que el magistrado prejuzgó la controversia por los comentarios vertidos ante la solicitud de ajustar la demanda conforme a lo señalado en el caso CA2023CV03933 revisado por el Tribunal de Apelaciones en el caso KLAN202400456.**

Según explicó la parte peticionaria, esta le había informado al Juez Morales Gómez que, en el caso CA2023CV03933 la Juez que presidió la vista había concluido que los demandantes podían reclamar lo ocurrido en el mes de diciembre de 2023 en el caso CA2021CV02252. Adujo que, sobre lo anterior, el Juez Morales Gómez había expresado que no iba a consolidar ambos pleitos porque se encontraban en etapas totalmente distintas y no iba a detener la resolución del pleito de epígrafe para esperar que se completara el otro pleito que había sido presentado con la muerte del señor Rivera Carcaña. La parte peticionaria añadió que, le había expresado al Juez Morales Gómez que el Tribunal de Apelaciones mencionó que la señora Rivera Velázquez podía utilizar los medios legales disponibles para reclamar por el alegado incumplimiento contractual por el señor Rivera Carcaña. Respecto a lo anterior, la parte peticionaria alegó que, el Juez Morales Gómez expresó "**que se pueda eso no quiere decir que lo tenga que hacer en este pleito**". Asimismo, que, para el Juez Morales Gómez el mejor curso de acción era que ambos pleitos continuaran por vía independiente debido a que los hechos eran totalmente separados. De igual manera, la parte peticionaria acotó que el Juez Morales Gómez había manifestado "que eso es prueba que se puede presentar en ese pleito sobre esa alegación inicial pero no tiene nada que ver la adjudicación de esa segunda demanda que presentaron".

Respecto a lo antes esbozado, la parte peticionaria razonó que, las expresiones del Juez Morales Gómez constituían una actitud formada respecto al caso. Adujo que, el Juez Morales Gómez se negó a considerar la consolidación sin haber revisado de manera exhaustiva los argumentos para la solicitud. Añadió que, el magistrado demostraba una inclinación de resolver el caso de forma expedita, y que ello, podía comprometer la imparcialidad del proceso

y suscitar preocupaciones sobre la profundidad y equidad de la adjudicación.

Finalmente, reiteró que, la conducta, participación y expresiones del Juez Morales Gómez durante la vista del 6 de septiembre de 2024, eran elementos que tendían a demostrar que este tenía una opinión formada previo a que la parte peticionaria tuviese su día en corte. Por motivo de lo anterior, le solicitó al foro primario la inhibición del Juez Morales Gómez.

El 16 de septiembre de 2024, la parte peticionaria presentó *Moción Solicitando Descubrimiento de Prueba por los Sucesos Nuevos Acaecidos en el mes de diciembre de 2023 los Cuales son Pertinentes en este Pleito.*

Así las cosas, SCI Puerto Rico I (en adelante, SCI) presentó *Moción en Cumplimiento de Orden y en Oposición a la Segunda "Moción de Inhibición..." Presentada por la Parte Demandante, por ser Improcedente en Derecho y por Constituir una Violación a Principios Éticos Generales y en Solicitud de Sanciones a la Parte Demandante.* En síntesis, SCI alegó que la parte peticionaria no logró demostrar que el Juez Morales Gómez hubiese incumplido con el inciso (a) de la Regla 63.1 de Procedimiento Civil. Argumentó que, la solicitud de la parte peticionaria carecía de fundamentos y que, era la segunda vez que esta solicitaba la inhibición del Juez Morales Gómez. Expresó que, la parte peticionaria se encontraba impedida de utilizar la Regla 63.1 de Procedimiento Civil con el objetivo de sacar de la adjudicación a un juez bajo motivos infundados. A tales efectos, solicitó que se declarara No Ha Lugar la moción de inhibición presentada por la parte peticionaria.

Mediante *Resolución* emitida el 8 de octubre de 2024, el foro de primera instancia determinó:

> El tribunal declara no ha lugar la solicitud de recusación que la parte demandante presentó el 16 de septiembre de 2024. Se ordena referir este asunto a la

atención de la Hon. Rosa Benítez Álvarez, Jueza Administradora, de conformidad con la Regla 63.2(c) de Procedimiento Civil.

El 9 de octubre de 2024, el foro *a quo* emitió una *Orden* donde dispuso lo siguiente:

Evaluado el expediente se refiere al Juez Lizardo Mattei para que atienda la recusaci[ó]n presentada.

Por otro lado, el 17 de octubre de 2024, el foro recurrido emitió *Orden* donde le concedió a las partes quince (15) días para suplementar sus escritos respecto a la moción de recusación/inhibición.

Luego de varios trámites procesales, innecesarios pormenorizar, el 31 de octubre de 2024, la parte peticionaria presentó la *Moción en Solicitud de Prórroga para Cumplir con la Orden de 17 de octubre de 2024*.

El 4 de noviembre de 2024, el Tribunal de Primera Instancia emitió la *Resolución* cuya revisión nos ocupa. En esencia, el foro *a quo* razonó que las expresiones vertidas por el Juez Morales Gómez constituían cuestiones judiciales y no cuestiones personales. Es decir, constituían cuestiones de derecho que no podían ser objeto de una inhibición. Reseñó que, respecto a la denegatoria de la solicitud de prueba pericial, le correspondía a la parte peticionaria acudir a un tribunal de mayor jerarquía para solicitar revisión de tal determinación y no presentar una recusación. Asimismo, el foro recurrido señaló que, el mecanismo de recusación no podía ser utilizado como subterfugio para evitar solicitar, a través de los vehículos procesales adecuados, la revisión de una determinación de derecho por parte de un Tribunal. A tales efectos, determinó lo siguiente:

Por los fundamentos antes expuestos, determinamos que no procede la inhibición del Juez Morales Gómez, pues las expresiones vertidas por éste durante la vista del 6 de septiembre de 2024 no reflejan que haya prejuzgado el caso de epígrafe, de forma tal que pudiera resultar en un menoscabo de los derechos

de la parte demandante o que pudiera socavar la confianza en nuestro sistema judicial.

En desacuerdo, la parte peticionaria presentó *Moción de Reconsideración*. Esta fue declarada No Ha Lugar mediante *Resolución Interlocutoria* emitida el 4 de febrero de 2025, por el foro *a quo*.

Aún inconforme, la parte peticionaria acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

- Erró el Tribunal de Primera Instancia, Sala Superior de Carolina al denegar la solicitud de recusación del Honorable Juez Ignacio Morales Gómez, cuando las manifestaciones y conducta del magistrado durante la vista del 6 de septiembre de 2024 evidenciaron prejuzgamiento del caso, incompatibles con la neutralidad judicial requerida por la Regla 63.1(a) de Procedimiento Civil y las garantías constitucionales al debido proceso de ley.

- Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Carolina al referir la adjudicación de la segunda moción de recusación al mismo juez Hon. Lizardo Mattei Román que resolvió la primera solicitud de inhibición en el mismo caso, creando así un conflicto procesal inherente que socava la objetividad y transparencia del proceso de recusación judicial.

Mediante *Resolución* emitida el 10 de marzo de 2025, le concedimos a la parte recurrida hasta el martes 18 de marzo de 2025, para que expusiera su posición en torno al recurso de *Certiorari* incoado.

Transcurrido el término concedido, sin que compareciera la parte recurrida a exponer su postura, disponemos del recurso sin el beneficio de su comparecencia.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR

994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[1]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327

---

[1] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari.* A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.  (Énfasis Nuestro).
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Inhibición y recusación de jueces

Nuestro ordenamiento jurídico ha provisto varios mecanismos que le garantizan al ciudadano que en la adjudicación de su causa el juzgador será un ente imparcial. "La fe de la ciudadanía en el sistema de justicia que impera en nuestro País… se preserva únicamente en la medida en que los ciudadanos confíen en la integridad, honestidad e imparcialidad de quienes tienen la noble encomienda de impartir justicia." *Lind v. Cruz*, 160 DPR 485, 488 (2003). *Martí Soler v. Gallardo Álvarez*, 170 DPR 1, 8 (2007).

Las Reglas de Procedimiento Civil, por su parte, regulan el procedimiento para solicitar la inhibición del juez y así salvaguardar el derecho del litigante a un debido proceso de ley.[2] *Martí Soler v. Gallardo Álvarez*, supra, pág. 8; *Mun. de Carolina v. CH Properties,* 200 DPR 701, 708 (2018). El procedimiento para la inhibición o

---

[2] 32 LPRA Ap. V.

recusación de un juez que preside un caso civil está dispuesto específicamente en la Regla 63 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 63. *Martí Soler v. Gallardo Álvarez*, supra, pág. 8

A tenor con lo provisto, la Regla 63.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 63.1, dispone lo siguiente:

> A iniciativa propia o a recusación de parte, un juez o jueza deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes:
>
> (a)   Por tener prejuicio o parcialidad hacia cualquiera de las personas o los abogados o abogadas que intervengan en el pleito o por haber prejuzgado el caso;
>
> (b)   Por tener interés personal o económico en el resultado del caso;
>
> (c)   Por existir parentesco de consanguinidad o afinidad dentro del cuarto grado con el (la) fiscal, procurador(a) de asuntos de familia, defensor(a) judicial, procurador(a) de menores o con cualquiera de las partes o de sus representantes legales en un procedimiento civil;
>
> (d)   Por existir una relación de amistad de tal naturaleza entre el juez o jueza y cualquiera de las partes, sus abogados o abogadas, testigos u otra persona involucrada en el pleito que pueda frustrar los fines de la justicia;
>
> (e)   Por haber sido abogado(a) o asesor(a) de cualquiera de las partes o de sus abogados(as) en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración;
>
> (f)   Por haber presidido el juicio del mismo caso en un tribunal inferior o por haber actuado como magistrado(a) a los fines de expedir una orden de arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal;
>
> (g)   Por intervenir en el procedimiento de una persona natural o jurídica que le haya facilitado o gestionado algún préstamo en el que no se hayan dispensado las garantías o condiciones usuales;
>
> (h)   Cuando en calidad de funcionario(a) que desempeña un empleo público, haya participado como abogado(a), asesor(a) o testigo esencial del caso en controversia;
>
> (i)   Cuando uno de los abogados o abogadas de las partes sea abogado(a) de los jueces o juezas que han de resolver la controversia ante su consideración o lo haya sido durante los últimos tres años, o

(j) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia. 32 LPRA Ap. V, R. 63.1.

Por su parte, la Regla 63.2 de Procedimiento Civil, 32 LPRA Ap. V. R. 63.2, "pauta el contenido de una moción de inhibición." *Martí Soler v. Gallardo Álvarez*, supra, pág. 8. Es decir, dispone en cuanto al perfeccionamiento de la solicitud de inhibición o recusación y su procedimiento. *Mun. de Carolina v. CH Properties*, supra, pág. 709. A estos efectos, la referida Regla dispone lo siguiente:

(a) Toda solicitud de recusación será jurada y se presentará ante el juez o jueza recusado(a) dentro de veinte (20) días desde que la parte solicitante conozca de la causa de la recusación. La solicitud incluirá los hechos específicos en los cuales se fundamenta y la prueba documental y declaraciones juradas en apoyo a la solicitud. Cuando la parte promovente de la recusación no cumpla con las formalidades antes señaladas, el juez o jueza podrá continuar con los procedimientos del caso.

b)    Una vez presentada la solicitud de recusación, si el juez o jueza recusado(a) concluye que procede su inhibición, hará constar mediante resolución escrita el inciso de la Regla 63.1 de la (a) a la (i) aplicable, en su defecto, la razón específica para su inhibición bajo el inciso (j) y la notificará a todas las partes. El caso será asignado a otro juez o jueza.

(c) Si el juez o jueza concluye que no procede su inhibición, se abstendrá de continuar actuando en su capacidad de juez o jueza en el caso y remitirá los autos del mismo al juez administrador o jueza administradora para la designación de un juez o jueza que resuelva la solicitud de recusación. La recusación se resolverá dentro del término de treinta (30) días de quedar sometida.
[. . .]

La Regla 63 de Procedimiento Civil se aplica en situaciones donde se reconocen previamente posibles conflictos que pueden incidir en la imparcialidad de un juez a la hora de resolver una controversia. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 774 (2013). En lo pertinente, la precitada regla prevé la posibilidad de que un juez haya prejuzgado la controversia, o sea, que sus visiones

personales manejen la adjudicación del caso, sin tomar en consideración la evidencia que se le presente ni el derecho aplicable. *Íd.*

La inhibición de un juez podrá darse bajo dos escenarios: por iniciativa del juez (*motu proprio*) o por solicitud de recusación de una parte. Cuando la inhibición es *motu proprio*, el juez deberá emitir una resolución escrita y fundamentada una vez conozca la causa, y abstenerse de intervenir tan pronto advenga en conocimiento de la causa. *Mun. de Carolina v. CH Properties*, supra, pág. 710.  Mientras que, en el caso de que una parte es la que solicita la recusación del juez, y este determina que procede su inhibición, deberá hacerlo constar mediante una resolución donde especificará el inciso de la Regla 63.1 de Procedimiento Civil, *supra*, que motiva su abstención. *Íd.* Nuestro Máximo Foro ha reseñado que, "[s]i se alude a la Regla 63.1(j) de Procedimiento Civil, *supra* (cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia), entonces deberá detallar las circunstancias específicas". *Íd.* págs. 710-711.

Según la Regla 63, la recusación de un juez o jueza no es una sanción disciplinaria, sino un mecanismo profiláctico procesal para garantizar la pureza de la tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 774. No obstante, cuando un  un juez o jueza actúa con pasión, prejuicio o parcialidad pudiera estar incurriendo también en una violación a sus deberes éticos.

En particular, el Canon 20 de Ética Judicial dispone que, los jueces deben abstenerse de adjudicar aquellos casos en los que tengan "prejuicio o parcialidad hacia cualquiera de las personas, las abogadas o los abogados que intervengan en el pleito o por haber prejuzgado el caso". *Íd.*; Canon XX de Ética Judicial, 4 LPRA IV-B. De igual forma, el mencionado canon establece que, los jueces

deberían inhibirse "[p]or cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia". *Mun. de Carolina v. CH Properties*, supra, pág. 712.

El deber de los jueces de abstenerse de intervenir en un caso en las circunstancias antes esbozadas responde específicamente a al deber ético de imparcialidad. Por ello, la Máxima Curia ha resaltado que, dicho deber requiere a todos los integrantes de la Judicatura no únicamente una conducta imparcial, sino también, la exclusión de toda posible apariencia de imparcialidad. *Dávila Nieves v. Meléndez Marín*, supra, pág. 774-775. Por ende, en aquellas instancias donde no sea posible adjudicar con imparcialidad, será responsabilidad de todo juez abstenerse o inhibirse. *Íd.* pág. 775.

Por último, sabido es que la imputación de parcialidad o prejuicio, como punta de lanza para obtener la inhibición o recusación de un juez, **debe cimentarse en cuestiones personales serias, no triviales ni judiciales; es decir, una actitud originada extrajudicialmente en situaciones que revistan sustancialidad**. (*Énfasis suplido*). *Ruiz v. Pepsico P.R., Inc.*, 148 DPR 586, 588-589 (1999); *Mun. de Carolina v. CH Properties*, supra, pág. 712. Es por lo que, para determinar la existencia de prejuicio personal por parte del juez, será necesario analizar la totalidad de la circunstancias a la luz de la prueba presentada, desde la perspectiva de la mítica figura del buen padre de familia. *Ruiz v. Pepsico P.R., Inc.*, supra, pág. 589; *Mun. de Carolina v. CH Properties*, supra, pág. 712.

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.

**III**

La parte peticionaria nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, donde

determinó que no procedía la inhibición del Juez Morales Gómez por ciertas expresiones vertidas durante la vista del 6 de septiembre de 2024. En su recurso, la parte peticionaria reitera que, las expresiones del Juez Morales Gómez constituyeron prejuzgamiento del caso, en contravención con la neutralidad exigida por la Regla 63.1 de Procedimiento Civil. De igual manera, argumenta que el Juez Lizardo Mattei no debió resolver la solicitud de inhibición debido a que ya había resuelto previamente otra solicitud de inhibición en el mismo caso.

Al examinar las expresiones en controversia, colegimos que, estas no denotan de forma alguna que el Juez Morales Gómez hubiese prejuzgado el caso. Como bien determinó el foro *a quo*, las decisiones y expresiones del Juez Morales Gómez no constituyen motivo suficiente para que proceda su inhibición. Puesto que, fueron basadas en cuestiones de derecho y dentro del margen de sus facultades discrecionales.

Recordemos que, la imputación de parcialidad o prejuicio, como punta de lanza para obtener la inhibición o recusación de un juez, **debe cimentarse en cuestiones personales serias, no triviales ni judiciales; es decir, una actitud originada extrajudicialmente en situaciones que revistan sustancialidad**.[3]

Evaluado el recurso presentado por la parte peticionaria, colegimos que, en ausencia de los criterios expuestos en la Regla 40 del Reglamento de este Tribunal, *supra*, no intervendremos con el mismo. Los señalamientos de error propuestos por la parte peticionaria, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra

---

[3] *Ruiz v. Pepsico P.R., Inc.*, supra, págs. 588-589; *Mun. de Carolina v. CH Properties*, supra, pág. 712.

cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por otro lado, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia.[4]

**IV**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.